# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| JASON MILLER, on his own behalf and all similarly situated individuals, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CV414-007 |
| GARIBALDI'S, INC., a Georgia for-profit corporation, and THE OLDE PINK HOUSE, INC., a Georgia for-profit corporation, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court is a discovery dispute in this Fair Labor Standards Act ("FLSA") collective action. Miller is the lead plaintiff and a former server at Garibaldi's Café, owned by defendant Garibaldi's, Inc. Doc. 1 at ¶ 6. He claims its "tip pool" practices deprived him, and all similarly situated individuals, of the FLSA-mandated minimum wage. Doc. 60 at 1-2; doc. 1 at ¶¶ 31-43. The Court conditionally certified a collective action, doc. 36, and 21 individuals, including Miller, are joined as plaintiffs. Doc. 61 at 1. Those plaintiffs now move to compel

Garibaldi's to produce documents, doc. 60, while Garibaldi's moves to compel depositions and written discovery responses, doc. 61.

## I.  BACKGROUND

Employers can pay less than the generally applicable minimum wage if an employee's tips make up the difference between the general minimum wage and the tipped minimum wage.  The difference between the general and tipped minimums is commonly referred to as a "tip credit."  *See Markov v. Golden Isles Cruise Lines, Inc.*, 2016 WL 1117584 at * 8 (S.D. Ga. March 21, 2016) (citing *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015)).  An employer can only claim a tip credit if certain conditions are met.  *See, id.*; 29 U.S.C. 203(m).  If an employer takes a tip credit and the credit is later shown to have been illegitimate, the employer is liable under the FLSA.  *See Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1355 (M.D. Fla. 2016) ("If an employer fails to satisfy any [of the tip-credit] preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result.")

This case involves a tip credit claim based on a tip pool.  *See* doc. 1 at ¶¶ 37-41 (alleging mismanaged tip pool precludes defendants from

2

claiming tip credit); doc. 60 at 2; doc. 62 at 1. The FLSA does not prohibit pooling employees' tips, but only allows it "among employees who customarily and regularly receive tips." 29 U.S.C. 203(m). Plaintiffs allege that Garibaldi's distributed funds from the tip pool to ineligible employees. *See* doc. 1 at 39. Garibaldi's concedes that if the tip pool were not limited to regularly and customarily tipped employees, it "would be effectively invalidated, resulting in measurable damages to the Plaintiffs." Doc. 62 at 3.

## II.  ANALYSIS

### A.  Plaintiffs' Motion to Compel

#### 1.  *Job Title Documents*

Plaintiffs originally sought to compel production of all documents "referencing" certain job titles and "referring" to employees holding those titles. Doc. 60 at 4-5, 9. Garibaldi's objected that producing the documents would require it "to search all of its files, including electronic files, for every time any of these [job titles] appear in its establishment or in its computer system." Doc. 62 at 16. In their reply brief plaintiffs concede that their original request "appears" to be moot because

Garibaldi's has "produced most if not all of the documents which reference the [specified] job titles." Doc. 65 at 2.

Despite suggesting mootness, plaintiffs assert that, "to the extent that Defendant continues to rely on its objections and refuses to produce job descriptions, manuals, policies and procedures[,] and other documents that *speak specifically* to the nature and duties [of the identified types of employees] performed and continue to perform, Defendant should be compelled to produce such documents." *Id.* (emphasis added). That follow-up request clearly alters the scope of the originals. Instead of requesting *all* the documents referring to the titles and employees who held them, plaintiffs now request only documents discussing "the nature and duties" of the specified types of employees. If Garibaldi's has produced all of the documents -- which plaintiffs concede is possible -- then the request for an order is moot. If Garibaldi's objects to the narrowed request -- its stated objection clearly does not apply, given that the request does not require an exhaustive review of every document in Garibaldi's possession -- there is no indication that the parties have attempted to resolve this uncertainty. They were duty-bound to do so before imposing on this Court. *See* Fed. R. Civ. P.

37(a)(1) (stating motion to compel must include certification of attempt to obtain production without court action); *see also* S.D. Ga. Civ. L. R. 26.5 (reminding counsel of the requirement to confer). Accordingly, plaintiffs' motion to compel production the job title documents is **DENIED**.

### 2. *Tip Records*

Plaintiffs also seek to compel production of "tip records," doc. 62 at 15, or "tip pool records," doc. 60 at 2, 9. Garibaldi's argues that the records requested are irrelevant and that the "requests are overly broad, burdensome[,] and not proportional to the needs of this case." Doc. 62 at 3. If the documents are irrelevant, the overbreadth objection is moot. The question of relevance, therefore, will be addressed first.

Relevance is a threshold for discovery, *see* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"), albeit a low one. As Garibaldi's succinctly states in its motion to compel, "[r]elevance is broadly construed by courts and 'encompasses any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Doc. 61 at 7 (quoting *Oppenheimer Fund,*

*Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Rule 26, quite simply, sets forth a *very* low threshold for relevancy, and thus, the court is inclined to err in favor of discovery rather than against it." *McCleod v. Nat'l R.R. Passenger Corp.*, 2014 WL 1616414 at * 3 (S.D. Ga. Apr. 22, 2014) (quotes and cite omitted).

Plaintiffs argue that the tip records are relevant for two reasons: (1) they are probative of who received disbursement from the tip pool, and (2) they are probative of the amount that each plaintiff contributed to the pool, thus the amount of damages each plaintiff can recover. *See* doc. 60 at 3-4; doc. 65 at 3-7. Garibaldi's responds that (1) the tip records are not relevant[1] to the issue of who received disbursements from the tip pool because the identity of the recipients is not in dispute, [2] and (2) that

---

[1] Garibaldi's makes much of the fact that Rule 26(b) has been amended to alter the scope of discoverable information. *See* doc. 62 at 5-6. Those changes, although substantive and substantial, do not change the *definition* of "relevance." Instead, they emphasize requirements already present in the Rules, like proportionality. *See* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality . . .."); *Sibley v. Choice Hotels Int'l*, 2015 WL 9413101 at * 2 (E.D.N.Y. Dec. 22, 2015) ("While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii)").

[2] Although it characterizes the identity of employees receiving distributions from the tip pool as "undisputed," on the same page of its brief it softens that assertion -- stating only that the identities of the recipients "have not and cannot be disputed by

plaintiffs cannot recover the tips they contributed, whether the pool was valid or not. *See* doc. 62 at 2-3.

Despite Garibaldi's assertion that there is no dispute over who received distributions from the tip pool, plaintiffs do dispute the issue. Doc. 65 at 3 (stating that assertion that the issue is undisputed is "inaccurate"); *see also* doc. 68 at 9 (disputing identities of employees receiving distributions from tip pool). Given the ongoing dispute[3] concerning the identities of the recipients of the pool, the tip records are not irrelevant.

The parties vigorously disagree about the relevance of the tip records to damages. Specifically, they dispute whether the plaintiffs are entitled to recover all the tips that they contributed to the pool, if it is

Plaintiff." Doc. 62 at 2. If Garibaldi's claims that there is no dispute of material fact as to the identities of the recipients of distributions from the tip pool, then it is free to move for summary judgment on that issue. *See* Fed. R. Civ. P. 56(a) (permitting motion for summary judgment on any claim or defense or any part of a claim or defense). Until then, the possibility of summary judgment does not justify allowing it to resist otherwise proper discovery requests.

[3] There is even a dispute about whether the issue is disputed. In opposition to Garibaldi's motion to compel, plaintiffs claim "it is undisputed that Defendants' [sic] required their servers[,] including all Plaintiffs[,] to contribute to a tip pool from which its managers received tips." Doc. 64 at 10. Garibaldi's counters that whether "managers" received funds from the tip pool "is the central and *highly contested* issue in this case." Doc. 68 at 8 (emphasis added). Although the parties' back and forth on this issue obscures rather than illuminates, one thing is clear -- the issue of who received disbursements from the tip pool, either in terms of the titles of those employees or the individual employees themselves, is disputed.

invalidated. *See* doc. 62 at 6-15; doc. 65 at 3-7. However, that argument goes to the merits of plaintiffs' claim, not the discoverability of the documents. Plaintiffs have asserted a claim to recover, *inter alia*, "improperly retained tips." Doc. 1 at 9. Garibaldi's argument that the tip records are not discoverable is, in essence, an argument that that claim fails as a matter of law. Doc. 62 at 3 (arguing the tip records are irrelevant because "the FLSA does not permit as a measure of damages the return of the tips collected from the Plaintiff-servers if the tip pool is invalidated"). That argument should be addressed in a dispositive motion (*e.g.* a motion for judgment on the pleadings or motion for summary judgment). In the absence of a final disposition of plaintiffs' claim, the tip records are relevant to a pending issue, and thus, discoverable.

Garibaldi's additionally objects to the burden of producing the tip records. Doc. 62 at 15. It alleges that "the tip records sought . . . consist of thousands of envelopes containing thousands of documents." *Id.* Plaintiff's reply claims, on the contrary, that they "seek[] only the single sheet of paper for each server each shift that documents the amount of tips each server was required to contribute to Defendant's tip pool (and

the distributees of such tips).” Doc. 65 at 7. Plaintiffs have again modified -- charitably, they have clarified -- the scope of their requests,[4] without any suggestion that the modification was communicated to Garibaldi's, and Garibaldi's maintained its refusal to comply. In the absence of a certification that the parties have conferred, plaintiffs' motion to compel production of the tip records is **DENIED**.

### 3. *Directions To The Parties*

Although plaintiffs are not entitled to an order compelling responses to its original requests, much less sanctions or fees, the documents requested are discoverable, and the requests, as stated in plaintiffs' reply brief, mitigate the concerns expressed in Garibaldi's objections. In order to facilitate the most efficient resolution of this dispute, and given the Court's considerable discretion to control

---

[4] Plaintiffs do not acknowledge the shift in scope. Doc. 65 at 7. The original requests sought “[a]ny and all writings evidencing the distributions of tips Defendants retained” and “[a]ny and all writings evidencing amounts to tips [sic] Defendants retained.” Doc. 60 at 2-3. Garibaldi's interpretation of those requests as including, for example, credit card receipts showing the amounts that servers were tipped, *see* doc. 62 at 15, is reasonable. Garibaldi's suggestion that the requests, even as written, would include “data regarding the total sales of food and beverages . . . [and] a copy of every credit card receipt for every table the server serviced whose occupants used a credit card to pay for their meal,” doc. 62 at 15, strains credulity. Disagreements about the scope of requests should be settled during the parties' conference, before moving to compel.

discovery, within 30 days from the date that this Order is served, Garibaldi's shall produce the following documents to plaintiffs' counsel:

    (1)    To the extent not already produced, all job descriptions, manuals, policies and procedures, and other documents that speak specifically to the nature of the duties that Garibaldi's "MODs," "Managers on Duty," or "Maître Ds," performed at any time relevant to this action; and

    (2)    Each "check-out" or "close-out" sheet[5] for each server for each shift that documents the amount of tips each server was required to contribute to the tip pool and the recipients of distributions from the tip pool.

If Garibaldi's objects to producing the documents, it should confer with plaintiffs and attempt to resolve its objections. If amicable resolution is impossible, then Garibaldi's must move the Court to modify this Order, and show cause why the documents should not be produced. It must do so within 21 days from the date that this Order is served.

## B.   Garibaldi's Motion To Compel

Garibaldi's seeks to compel discovery from plaintiffs who "opted in" to this case. An employee who alleges that he has been paid less than

---

[5] Garibalid's explains that it objects to producing the "check-out envelopes with their recording of each dollar amount tipped out to the maître d's, bartenders, server assistants[,] and food runners." Doc. 62 at 3. It identifies "check-out" or "close out" sheets as "the front" of the "check out" envelope. *Id.* at 2-3; 2 n. 1. It has attached an example of a "check out envelope" to its brief. *See* doc. 62-5. The Court interprets the plaintiffs' request for "the single sheet of paper" as limited to the "check out" or "close out" sheet, as exemplified by doc. 62-5 at 2.

the minimum wage can bring an action against his employer "for and in behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b).  The similarly situated employees are not considered plaintiffs, however, unless their written consent is filed with the court.  *Id.* Individuals who have consented to join are referred to as "opt-in plaintiffs."

But opt-in plaintiffs can create difficulties in discovery.  *See Perrin v. Papa John's Int'l, Inc.*, 2014 WL 4749547 at *3 (E.D. Mo. Sept. 24, 2014) (pointing out "disputes regarding the proper scope of individualized discovery from opt-in FLSA plaintiffs are common").  Courts have relied on the specific features of each case to resolve such disputes, even where the number of plaintiffs is relatively low.  *Compare Daniel v. Quail Int'l, Inc.,* 2010 WL 55941 (M.D. Ga. Jan. 5, 2010) (allowing individual discovery in 36-plaintiff FLSA action), *with Morales-Arcadio v. Shannon Produce Farms, Inc.*, 2006 WL 2578835 (S.D. Ga. Aug. 28, 2006) (refusing to compel discovery responses from eleven opt-in plaintiffs in 45-plaintiff FLSA action).  Much of the parties' dispute here focuses on whether Garibaldi's is entitled to "individualized discovery" from opt-in plaintiffs.

## *1. Deposition Attendance*

Garibaldi's has conducted 17 depositions in this case. It has deposed 14 of the 21 plaintiffs, and several have been deposed more than once. *See* doc. 61 at 5; doc. 68 at 6. Garibaldi's wants to depose the seven opt-in plaintiffs that it has yet to depose, doc. 61 at 5, and plaintiffs object.

An order compelling the additional depositions is not appropriate here. Garibaldi's was required, yet failed, either to secure a stipulation or seek the Courts permission to hold more than 10 depositions. *See* Fed. R. Civ. P. 30(a)(2)(A)(i) ("A party must obtain leave of court . . . if the parties have not stipulated to the deposition and [] the deposition would result in more than 10 depositions being taken . . . by the defendants"). Depositions of any additional plaintiffs, therefore, required either stipulation or the Court's leave.

With no stipulation and faced with plaintiff's objection,[6] Garibaldi's was required to seek the Court's leave for the additional depositions. *See*

---

[6] Garibaldi's suggests that plaintiffs' counsel has implicitly waived any objection to the depositions through failing to raise the issue by motion, as contemplated in the parties' Rule 26(f) Report, doc. 48 at 2-3, and by cooperating with scheduling and taking depositions. Doc. 61 at 11-12. It has submitted selected email correspondence with plaintiffs' counsel concerning the schedule in support of that assertion. *See* doc.

*Advanced Sterilization Prods., etc. v. Jacob*, 190 F.R.D. 284, 286 (D. Mass. 2000) (Rule 30 requires that "in the absence of a stipulation, a party seeking to take more than ten depositions must *explicitly* seek and obtain leave of court before that party can commence any depositions in excess of the ten-deposition limit"). Since it failed to do so, it is not entitled to an order compelling depositions now. Garibaldi's request for such an order, then, is **DENIED,** as is its alternative request for dismissal based on plaintiffs' failure to attend their depositions.

It may be appropriate for Garibaldi's to take the additional depositions that it now seeks to compel. But it thus far has failed to make a sufficient showing of necessity. Garibaldi's argument focuses on whether it is entitled to "individualized discovery" in this action, *see* doc. 61 at 9-12, and, as discussed above, it may well be. However, even if they

---

61-1 at 4-41. In order to modify the limits on discovery imposed by the Federal Rules, parties must stipulate to those modifications, and the emails do not show that. *See* Fed. R. Civ. P. 29(b) (permitting stipulation to modification of "other procedures governing or limiting discovery"); *Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 478 (S.D. Ohio 2014) (refusing to enforce alleged informal stipulation where correspondence submitted in support was subject to alternative interpretations); *Marfork Coal Co. v. Smith*, 2011 WL 111880 at * 4 n. 8 (S.D. W. Va. Jan. 13, 2011) (finding letter conceding to a request for extension of time for discovery was not a "stipulation," for Rule 29 purposes; such a stipulation "is a separate written document signed by the attorneys for the parties setting forth specifically their agreement respecting changes in discovery procedure"). Although neither party discusses whether the additional depositions were stipulated to, given the plaintiffs' current opposition, the Court assumes they were not.

were entitled to such discovery, it would be subject to the Federal Rules, including the 10-deposition limit. *See Faust v. Comcast Cable Commc'ns Mgmt., LLC*, 2013 WL 1395933 at * 3 (D. Md. April 3, 2013). "Because [the Rule 30(a)] limit is intended to curb abusive discovery practices, it stands to reason that a party wishing to conduct more than 10 depositions has the burden of persuading the court that these additional depositions are necessary. This showing cannot be based upon general assertions. Rather, 'the moving party must make a particularized showing why extra depositions are necessary.'" *Moore v. Abbott Labs.*, 2009 WL 73876 at * 1 (S.D. Ohio Jan. 8, 2009) (quoting *Schiller Am., Inc. v. Welch Allyn, Inc.*, 2007 WL 2702247 at * 1 (S.D. Fla. Sept. 14, 2007)).

Garibaldi's motion does not make a sufficiently particularized showing of necessity to grant it leave to take additional depositions. The issues it identifies as the likely subjects of the depositions[7] may be proper subjects for discovery, but it is not clear that depositions are necessary to solicit that information, *see* doc. 64 at 6 (arguing Garibaldi's records

---

[7] Garibaldi's suggests that the additional depositions would cover "each Plaintiff's contact with any maître d's, their observation of the duties and conduct of the maître d's, the length of employment and rate of pay in order to determine each Plaintiff's damages, and each Plaintiff's recollections and records pertaining to the allegedly invalid tip pool, including whether each Plaintiff received notice of the tip pool details as required by 29 U.S.C. § 203(m)." Doc. 61 at 12-13.

provide information on damages and notice). Garibaldi's also argues that the additional depositions would not be cumulative or duplicative because "there were several persons employed as maître d's during different periods of time" relevant to this case, and "[e]ach plaintiff worked with different maître d's." Doc. 68 at 5. Even assuming that there was no overlap between plaintiffs and maître d's, Garibaldi's has not established that depositions of each individual plaintiff is necessary to determine whether the maître d's were proper recipients of tip pool distributions.

Given the Court's broad discretion to control discovery and scheduling, and Garibaldi's diligent efforts to schedule the depositions prior to the close of discovery, the Court will give it a chance to seek leave to conduct them. But the parties must first confer and determine whether plaintiffs will stipulate to the additional depositions. If they will, that stipulation should be reduced to writing, including a schedule for the additional depositions, and filed with the Court. If plaintiffs will not stipulate to the additional depositions within 21 days from the date that this Order is filed, then Garibaldi's may move the Court for leave to

hold the additional depositions, showing why each of the additional depositions is necessary.

### 2. *Written Discovery*

It is undisputed that "nine Plaintiffs have failed to respond to the Defendant's written discovery requests." *See* doc. 61 at 6; doc. 64 at 3 (explaining that any plaintiff's failure to respond to discovery "was due almost entirely to a lack of communication with undersigned counsel"). Because several plaintiffs have failed to respond, Garibaldi's requests an order "compelling the Plaintiffs . . . to respond fully to Defendant's written discovery requests." Doc. 61 at 7.

Nothing in the Federal Rules allowed plaintiffs to ignore properly served discovery requests. *See* Fed. R. Civ. P. 33(a)(1) (allowing "a party" to service interrogatories "on any other party"); 33(b)(2) ("The responding party *must* serve its answers and any objections within 30 days after being served.") (emphasis added); 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); 34(a) (allowing "a party" to serve requests to produce "on any other party"); 34(b)(2)(A) (absent here-inapplicable exception, requiring requests be answered "in writing

within 30 days after being served"); 34(b)(2)(B) ("[T]he response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."). "As a general rule, when a party fails to object timely to discovery requests, such objections are waived." *United Steelworkers of Am., AFL-CIO-CLC v. Ivaco, Inc.*, 2002 WL 31932875 at * 4 (N.D. Ga. Jan. 13, 2003); *see also Limu Co., LLC v. Burling*, 2013 WL 1482760 at * 1 (M.D. Fla. April 11, 2013) (quotes and cites omitted) (stating "[t]here is substantial legal precedent supporting the general rule that if a party fails to respond in writing within thirty days of being served with a request for production of documents, it is appropriate for the court to find that the party's objections are waived, unless the court finds good cause and excuses that failure" and collecting cases). Under the Rules, then, plaintiffs could respond, object, or seek a protective order, under Rule 26(c). *See* Fed. R. Civ. P. 26(c). They did none of those things, so the Court **GRANTS** Garibaldi's request for an order compelling responses to its written discovery from plaintiffs Richard Nagro, Kenneth Sheets, Thomas Medders, Matthew Riggs, Chris Graham, Lenion Brooker, Blair Ritzert, Madeline Austin, and Todd

Jones.  The plaintiffs shall serve answers to Garibaldi's discovery requests within 30 days from the date that this Order is served.  Failure to comply with this Order shall result in a recommendation that the recalcitrant plaintiffs' claims be dismissed.

### 3. *Interrogatory No. 10*

Garibaldi's wants this Court to overrule plaintiffs' objection to its interrogatory requesting that plaintiffs "describe all reasons, both factual and legal, which support the allegation" that "Defendants knowingly, willfully, or in reckless disregard of the rights of Plaintiffs failed to pay minimum wages required."  Doc. 61 at 17.  Plaintiffs insist that such would require disclosure of material protected by attorney-client privilege or the work-product doctrine.  Doc. 61-6 at 7.  Notwithstanding their objection, plaintiffs respond with a legal conclusion -- "that Defendants knowingly, willfully or in reckless disregard of the rights of Plaintiffs failed to pay minimum wage as required by law."  *Id.; see also,* doc. 61 at 17.

Contention interrogatories are nothing new,[8] and with them a party is free to learn "the principal or material facts which support an allegation or defense." *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006) (quotes and cites omitted). Further, plaintiffs' objection on the basis of attorney-client privilege and work product protection are iffy, at best. *See* Fed. R. Civ. P. 26, advisory committee's note to 1970 amendment (given amendment to allow contention interrogatories, "a party and his attorney . . . may be required to disclose, to some extent, mental impressions, opinions, or conclusions"). Contention interrogatories may not, however, reach questions of "pure law." *See* Fed. R. Civ. P. 33, advisory committee's note to 1970 amendment (even "under the new language interrogatories may not extend to issues of 'pure law,' *i.e.*, legal issues unrelated to the facts of the case"). Garibaldi's interrogatory is proper, therefore, to the extent it seeks "opinions or contentions that call for the application of law to facts," and

---

[8] "As this court previously explained: ''Contention' interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims. The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required.'" *Eller v. Liberty Cnty. Ga.*, 2010 WL 2402770 at * 1 (S.D. Ga. Jun. 14, 2011) (quoting *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 (6th Cir. 1998)).

the "principal or material facts" supporting plaintiffs' allegation.[9] *See*

*Moses*, 236 F.R.D. at 674.

Plaintiffs' bare, conclusory restatement of the contention whose support the interrogatory sought is facially insufficient. In fact, it verges on sanctionable conduct, *see* Fed. R. Civ. P. 11 (allowing sanctions for advancing frivolous argument in motion presented to the court). Even if, as plaintiffs' contend, the facts supporting the contention are "well-known" to Garibaldi's, doc. 64 at 10, it obviously does not follow that the alleged *relationship* between those facts and the contention at issue is also well-known.

Plaintiffs' response states that their counsel "offered to submit a supplemental response to the interrogatory and is still willing to do so." *Id.* at 9 n. 7. Garibaldi's, apparently, was unaware of that offer.[10] *See*

---

[9]    Garibaldi's request, as written, seeks "all reasons, both factual and legal" supporting the allegation. Doc. 61 at 17. Contention interrogatories "are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case. Thus, the general rule . . . is that interrogatories may properly ask for the 'principal or material' facts which support an allegation or defense." *Moses*, 236 F.R.D. at 674 (internal quotes and cites omitted). The parties should bear that limitation in mind as they confer about the sufficiency of plaintiffs' supplementary response.

[10] Garibaldi's reply brief argues that the supplement plaintiffs offer in their response is insufficient to show that the alleged violation of the FLSA was knowing, willful, or

doc. 68 at 8. Garibaldi's is entitled to a complete response to Interrogatory No. 10, but if plaintiffs are willing to voluntarily supplement their response, then there is no action for the Court to take. Accordingly, Garibaldi's motion to compel further response to Interrogatory No. 10 is **DENIED** without prejudice. If plaintiffs fail to supplement their response, as offered, or if Garibaldi's contends that the supplemental response remains insufficient, it is free to renew its motion to compel, including its request for sanctions.

## III. CONCLUSION

To summarize: Plaintiffs' Motion to Compel (doc. 60) responses to its original discovery requests is **DENIED**, while Garibaldi's Motion to Compel (doc. 61) is **GRANTED** in part and **DENIED** in part. The parties' respective requests to recover the costs of bringing these motions are **DENIED**.

It is clear that discovery in this case has not progressed smoothly. As the parties confer, as contemplated above, they should remember that

---

reckless. Doc. 68 at 8-12. As the parties confer about the sufficiency of plaintiffs' supplemental response, they are reminded that a contention interrogatory is not, indeed cannot be, insufficient because it fails to provide adequate proof of the contention. If a contention is shown to be factually unsupported, the proper response is a motion for summary judgment.

they each have an obligation to ensure that discovery is conducted in a manner consistent with the letter and spirit of the Federal Rules. *See* Fed. R. Civ. P. 26(g); *id.* advisory committee's note to 1983 amendment ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."). Rather than meet and confer, the parties here slowly worked out much of their dispute through their briefs before this Court. That obviously wastes this Court's time. Just as obviously, the Court could not function if it had to routinely stop and address every discovery spat, including those otherwise resolvable through a genuine, good-faith effort on the part of counsel. That's precisely why discovery is supposed to be self-enforcing, and thus why the obligation to confer is enforced. *Sua sponte* sanctions await those who casually disregard this reminder.

The Court has amended the Scheduling Order in this case to extend the dispositive motions deadline until 45 days after the resolution of the parties' discovery motions. Doc. 69. Given the additional conference and discovery contemplated in this Order, the parties should consider, when they confer, whether an additional extension is necessary.

If they determine that it is, then they should move within 21 days from the date that this Order is served and propose any additional Scheduling Order modifications.

**SO ORDERED,** this <u>15th</u> day of December, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA